IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2026

**JACOB EVAN COYNE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 314836   Amanda B. Dunn, Judge**

_____

**No. E2025-00589-CCA-R3-PC**

_____

The Petitioner, Jacob Evan Coyne, appeals from the Hamilton County Criminal Court's denial of his petition for post-conviction relief.  On appeal, the Petitioner maintains that he received the ineffective assistance of counsel based upon trial counsel's (1) failure to investigate or file pretrial motions challenging the credibility of an officer who investigated his case, (2) failure to sufficiently meet with or to advise the Petitioner regarding the nature of his case, and (3) failure to adequately advise the Petitioner regarding the status of plea negotiations.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Claudia Coco Angel, Signal Mountain, Tennessee, for the appellant, Jacob Evan Coyne.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin Barker, Assistant Attorney General; Jody Pickens, District Attorney General Pro Tempore; and Thomas R.E. McEntyre, Assistant District Attorney General Pro Tempore, for the appellee, State of Tennessee.

**OPINION**

**I.      FACTUAL AND PROCEDURAL HISTORY**

A.  TRIAL

This case arises from the March 11, 2017 murder of the victim, Jalen Little. The evidence adduced at the Petitioner's February 2020 trial established the victim met Zachary Adam Chadwick and several other individuals at Mr. Chadwick's home on the evening of March 11, 2017. *State v. Coyne*, No. E2020-01655-CCA-R3-CD, 2022 WL 414355, at *5 (Tenn. Crim. App. Feb. 11, 2022), *perm. app. denied* (Tenn. June 9, 2022). At some point during the evening, Mr. Chadwick, the victim, and another individual drove to a Waffle House restaurant to purchase marijuana. *Id*. Upon arriving, Mr. Chadwick gave the victim approximately $900 cash with instructions to purchase the marijuana. *Id*. The victim exited the vehicle, and Mr. Chadwick and the other individual waited between forty-five minutes and an hour before attempting to contact the victim. *Id*. Mr. Chadwick "became angry" when the victim did not return to the vehicle and drove back home. *Id*. There, he met with the Petitioner and several other individuals and learned that the victim had posted on his social media that he was "Atlanta-bound." *Id*. After learning that the victim was actually at his home in Red Bank, the Petitioner informed Mr. Chadwick that they "were going to handle it." *Id*.

Two individuals accompanied the Petitioner and Mr. Chadwick to Red Bank. *Id*. When they arrived, the Petitioner and Mr. Chadwick exited the vehicle and approached the victim outside his home. *Id*. The Petitioner asked the victim "where the money was," and when the victim attempted to "pull out his pockets," the Petitioner fired fifteen shots at the victim, killing him. *Id*. at *5, *11. When the Petitioner and Mr. Chadwick returned to the vehicle, the Petitioner gave Mr. Chadwick a twenty-dollar bill and said, "I'm sorry, I could only get twenty dollars." *Id*. at *5.

Upon this evidence, the jury convicted the Defendant of first degree premeditated murder, felony murder, and especially aggravated robbery. *Id*. at *1, *10. The Defendant timely appealed, challenging the sufficiency of the evidence supporting the conviction. *Id*. at *10. This court affirmed the trial court's judgments, *Id*. at *13, and the Tennessee Supreme Court denied review on June 9, 2022. *State v. Coyne*, No. E2020-01655-SC-R11-CD (Tenn. June 9, 2022) (order).

B. POST-CONVICTION PROCEEDINGS

The Petitioner filed a timely *pro se* petition for post-conviction relief on December 5, 2022, asserting, among other claims, that he received ineffective assistance of counsel. The post-conviction court appointed counsel, who filed an amended petition for post-conviction relief on September 15, 2023. As relevant to this appeal, the Petitioner alleged in his amended petition that trial counsel rendered ineffective assistance by failing to investigate, interview, challenge the credibility of, or seek the suppression of "certain evidence" related to former Chattanooga Police Department ("CPD") Officer Cameka Bruce. The Petitioner asserted that Officer Bruce was a lead investigator in his case but

was terminated from the CPD after the preliminary hearing. The Petitioner also alleged that trial counsel failed to meet with him sufficiently to discuss his case and failed to adequately advise him of the status of plea negotiations or to communicate to the State his desire to accept a plea deal before trial. The State filed a response in opposition to the petition on January 19, 2024. The post-conviction court held an evidentiary hearing on November 21, 2024.[1]

Trial counsel testified that he had practiced law for just over 30 years and represented the Petitioner at the February 2020 trial. He recalled that the Petitioner was initially represented by the District Public Defender's Office ("prior counsel"), which represented the Petitioner during his preliminary hearing. Trial counsel was unsure how long he represented the Petitioner before his trial, but he estimated meeting with the Petitioner "more than five" and "[a]bout ten" times before trial. He testified he reviewed all of the discovery materials with the Petitioner during these meetings. He also noted he retained a private investigator to assist him in preparing for trial, and who also met individually with the Petitioner. Trial counsel further stated that he discussed "pros and cons of going to trial" with the Petitioner and that he explained there were "three independent eye-witnesses" who would likely testify against the Petitioner.

Trial counsel testified that when he began representing the Petitioner, he learned from the prosecutor that the State did not intend to engage in plea negotiations. Trial counsel later learned that the State had previously extended a fifteen-year offer to the Petitioner, which the Petitioner rejected because he preferred a ten-year agreement. Trial counsel testified that he would have attempted to negotiate a plea agreement with the State if the State indicated it was willing to reopen plea negotiations. However, when he was appointed to represent the Petitioner, the State informed him it was "ready to go to trial." Although he was unsure precisely when, he testified that he informed the Petitioner that the State would not engage in further plea negotiations. He recalled that the Petitioner and Mr. Chadwick had initially been charged as codefendants, but their cases were severed, and Mr. Chadwick pled guilty to a lesser charge.

Trial counsel stated that in preparing for the Petitioner's trial, he reviewed the evidence against the Petitioner, "looked at any defenses," spoke with the private investigator, investigated the State's witnesses, and "essentially prepared to counteract whatever the State put on." He recalled that the State's witnesses refused to speak with him or his private investigator.

---

[1] We note that Tennessee Code Annotated section 40-30-108(a) requires the State to file an answer to an amended petition for post-conviction relief within thirty days "unless extended for good cause" and that Tennessee Code Annotated section 40-30-109(a) requires the court to schedule an evidentiary hearing within four months of the entry of the prehearing order, which must be filed within thirty days of the State's answer. No explanation for the late filing or hearing is contained in the record or addressed by the parties

Trial counsel testified that he reviewed the transcript of the preliminary hearing and that Officer Bruce testified at that hearing. He described Officer Bruce as the initial lead investigator in the Petitioner's case who interviewed witnesses and processed the crime scene. Trial counsel was unsure whether Officer Bruce obtained any search warrants but averred that "she probably did." He testified that Officer Bruce was terminated in January 2019, after the Petitioner's preliminary hearing but before his trial, for a disciplinary "finding of untruthfulness." Officer Bruce's Internal Affairs file was introduced as an exhibit to the post-conviction hearing, which indicated that allegations of "violation of rules and orders," "[i]nsubordination," "[m]isrepresentation," and "[m]issing property[/]evidence" were sustained against Officer Bruce in October 2018 following an administrative investigation. Officer Bruce was initially suspended from her position for 160 hours. Trial counsel agreed that the allegations supporting this disciplinary action were initiated in November 2017 and that the misbehavior "[p]robably" occurred during the investigation into the victim's murder. Trial counsel also noted that allegations of insubordination and untruthfulness received in November 2018 were sustained in January 2019 and that Officer Bruce was consequently terminated from her position.

Trial counsel recalled that the Petitioner wanted to talk about "the issues with Officer Bruce" at trial, but that he advised the Petitioner that "[i]t made no sense" to call her as a witness. Trial counsel explained that "she would have sat there and still testified against him," and trial counsel would not have been able to impeach her testimony. Trial counsel stated that while the disciplinary actions concerned him, Officer Bruce was not called as a State's witness and that "anything [the State] put on had nothing to do with" her involvement in the Petitioner's case. Accordingly, he did not request her Internal Affairs file while preparing for trial. He recalled filing certain pretrial motions, but he did not believe any of those motions specifically pertained to Officer Bruce's involvement in the Petitioner's case. He further averred that filing anything regarding Officer Bruce's involvement "may have also opened doors that we may not have wanted to open."

Trial counsel testified that during her investigation, Officer Bruce collected a t-shirt the Petitioner had worn either during the murder or shortly afterwards. He stated he did not challenge the t-shirt prior to trial or otherwise question its chain of custody because the Petitioner was "able to explain . . . about everything that was involved in that."

On cross-examination, trial counsel testified he had ample time to prepare for trial after he was appointed to represent the Petitioner. He averred that he discussed in person with the Petitioner the State's unwillingness to negotiate a plea agreement. He also agreed that he did not feel the need to file any pretrial motions regarding Officer Bruce's involvement in the Petitioner's case because the State indicated it would not call her as a witness.

- 4 -

The Petitioner described his relationship with trial counsel as "decent" and recalled meeting with trial counsel three times. He estimated these meetings lasted between ten and fifteen minutes. He recalled informing trial counsel of "the evidence" in his case and attempting to explain different topics he wanted trial counsel to investigate, but that trial counsel "shut down" his ideas. The Petitioner also stated that trial counsel did not review discovery with him during their meetings. He stated he met with the private investigator twice.

The Petitioner was unsure when the plea offer was extended but estimated he had been in custody for approximately two years and was still represented by prior counsel. He testified it was his "understanding" that the former plea offer was "still on the table" when trial counsel was appointed. He conceded he was unsure whether the offer was still available. The Petitioner stated that trial counsel did not discuss the plea offer with him and that he did not know whether the trial court scheduled any plea deadline.

The Petitioner testified that trial counsel did not discuss the "pros and cons of going to trial" with him prior to his trial. The Petitioner stated that had trial counsel done so, he "[m]ost definitely" would have made a different decision about proceeding to trial. He also stated that trial counsel informed him of only two "independent eye-witnesses" involved in the case. The Petitioner further recalled that he gave trial counsel the names of two witnesses he believed would have testified in his favor and rebutted the State's identification evidence. He averred that trial counsel did not sufficiently investigate these witnesses.

The Petitioner stated that he informed trial counsel of certain issues regarding Officer Bruce. He alleged that Officer Bruce "committed perjury during preliminary testimony" and omitted certain steps from or otherwise mishandled her investigation into his case. He was unaware that she had been terminated from her position at the CPD.

On cross-examination, the Petitioner reiterated that trial counsel did not review discovery with him and said that only prior counsel had done so. He also maintained that Officer Bruce made several misstatements and testified at the preliminary hearing that she had taken evidence home. He stated he discussed his concerns about Officer Bruce's investigation with the private investigator.

Following arguments, the post-conviction court took the matter under advisement. On April 17, 2025, the post-conviction court entered an order denying post-conviction relief. This timely appeal followed.

## II. ANALYSIS

On appeal, the Petitioner maintains that the trial court erred in denying his petition for post-conviction relief on the grounds that he received the ineffective assistance of counsel based upon trial counsel's (1) failure to investigate or to file pretrial motions challenging Officer Bruce's credibility, (2) failure to sufficiently meet with or to advise the Petitioner regarding the nature of his case, and (3) failure to adequately advise the Petitioner regarding the status of plea negotiations. The State responds that the post-conviction court did not err in denying relief. We agree with the State.

The Post-Conviction Procedure Act provides relief only when a petitioner's "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. In a post-conviction proceeding, a petitioner has the burden of proving his allegations by clear and convincing evidence. *Id.*; Tenn. S. Ct. R. 28, § 8(D)(1). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against them, *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (citations omitted), while its application of the law to those factual findings and the conclusions drawn therefrom are reviewed *de novo* with no presumption of correctness, *Holland v. State*, 610 S.W.3d 450, 455 (Tenn. 2020) (citations omitted).

Both the Constitution of the United States and the Constitution of Tennessee provide the criminal defendant the right to the effective assistance of counsel. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); Tenn. Const. art. 1, § 9 ("That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel"); *see Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). To succeed on a claim of ineffective assistance of counsel, the post-conviction petitioner must prove, and the record must affirmatively establish, both that counsel performed deficiently and that this deficient performance adversely impacted the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 693 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "A court need not address both prongs if the petitioner fails to demonstrate either one of them." *Davidson*, 453 S.W.3d at 393. Each element of the *Strickland* analysis of an ineffective assistance of counsel claim is a mixed question of law and fact that this court reviews *de novo*. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)); *Kendrick*, 454 S.W.3d at 457.

Deficient performance is that which, in consideration of "all the circumstances" and the prevailing professional norms at the time of counsel's representation, falls below an

objective standard of reasonableness. *Phillips*, 647 S.W.3d at 400 (quoting *Strickland*, 466 U.S. at 688). We defer to counsel's strategic and tactical decisions, even if such decisions were unsuccessful or harmful to the defense, so long as they were "informed ones based upon adequate preparation." *Moore v. State*, 485 S.W.3d 411, 419 (Tenn. 2016) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). In other words, so long as counsel's decisions are made after adequate preparation, this court "will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Berry v. State*, 366 S.W.3d 160, 172-73 (Tenn. Crim. App. 2011). Thus, a petitioner who alleges ineffective assistance of counsel must, through clear and convincing evidence, overcome the strong presumption "that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted).

The post-conviction petitioner must also prove that counsel's deficient performance affected the outcome of his or her trial; that is, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is that which is "sufficient to undermine confidence in the outcome" of the trial. *Id*. Accordingly, "a petitioner must establish that 'counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome.'" *Mobley v. State*, 397 S.W.3d 70, 81 (Tenn. 2013) (quoting *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008)).

The Petitioner first raises several claims of ineffective assistance of counsel related to trial counsel's treatment of Officer Bruce. He argues that trial counsel failed to make reasonable efforts to interview Officer Bruce, to investigate her termination from the CPD by requesting her Internal Affairs file, and to challenge her credibility by filing pretrial motions. In consideration of these claims, the post-conviction court accredited trial counsel's testimony that he was aware of Officer Bruce's disciplinary history and her ultimate termination from the CPD; that he made a reasonable, strategic decision in refraining from focusing on Officer Bruce's involvement in the Petitioner's case; and that the Petitioner had failed to identify specifically what pretrial motions trial counsel should have filed.

The record does not preponderate against the post-conviction court's findings. A post-conviction petitioner claiming he or she received ineffective assistance of counsel based upon counsel's failure to interview a known witness must show that the witness possessed critical evidence which was not used in the trial, resulting in prejudice to the petitioner. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This requirement is satisfied by presenting the witness at the evidentiary hearing. *Id.* at 758. The Petitioner did not call Officer Bruce as a witness at the evidentiary hearing, and we cannot speculate

as to what she may or may not have said regarding her investigation into the Petitioner's case. This claim is unavailing on this basis. Moreover, trial counsel testified he was aware of Officer Bruce's involvement in the Petitioner's case as the lead investigator and that she was terminated in January 2019 for a disciplinary "finding of untruthfulness." He further testified that the Petitioner told him he wanted to challenge Officer Bruce's credibility at trial and that he advised the Petitioner that filing anything regarding Officer Bruce's involvement "may have also opened doors that we may not have wanted to open" and that if she was called as a witness, "she would have sat there and still testified against" the Petitioner. Although the Petitioner does not maintain on appeal his claim that trial counsel rendered ineffective assistance by failing to call Officer Bruce as a witness, trial counsel's testimony regarding his responses to the Petitioner's requests to call her as a witness nevertheless indicates that trial counsel made reasonable efforts to investigate and was aware of her background and involvement with the Petitioner's case.

Although he did not call Officer Bruce at the evidentiary hearing, the Petitioner introduced her Internal Affairs file as an exhibit and questioned trial counsel regarding the disciplinary actions contained therein. However, the Petitioner does not identify any aspect of the Internal Affairs file that would have proven any misconduct on Officer Bruce's behalf relevant to the Petitioner's case. When a post-conviction petitioner alleges he or she received ineffective assistance of counsel due to counsel's failure to investigate, the petitioner bears the burden of showing what information a reasonable investigation would have identified. *Owens v. State*, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999); *see also Webb v. State*, No. E2006-02352-CCA-R3-PC, 2007 WL 2570201, at *14 (Tenn. Crim. App. Sept. 7, 2007), *no perm. app. filed*. While the Petitioner presented Officer Bruce's Internal Affairs records at the evidentiary hearing, he did not identify any specific provision of those records of which trial counsel was unaware or which would have changed the outcome of the Petitioner's case, nor does he do so on appeal.[2] *See Olive v. State*, No. M2023-00719-CCA-R3-PC, 2024 WL 2797015, at *8-9 (Tenn. Crim. App. May 31, 2024) (holding, in the context of a petitioner's claims that trial counsel failed to reasonably investigate the victim's medical records, that a post-conviction petitioner must introduce the medical records and prove, by clear and convincing evidence, how the information contained therein "would reasonably have produced a different result at trial."), *perm. app. denied* (Tenn. Oct. 24, 2024). The record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish his claim of ineffective assistance of counsel. The post-conviction court did not err by denying relief on this basis.

---

[2] We note that at the evidentiary hearing, trial counsel agreed that the offenses giving rise to Officer Bruce's October 2018 suspension "[p]robably" occurred during the timeframe of the investigation into the victim's murder. However, the Petitioner again does not identify on appeal how trial counsel was deficient in failing to further investigate these offenses or how the offenses prejudiced the Petitioner's case.

Relatedly, the Petitioner alleges that trial counsel rendered ineffective assistance by failing to file motions to suppress relating to Officer Bruce's involvement in his case; namely, "her handling of the [crime] scene or her truthfulness in handling sworn affidavits in search warrants." He asserts that because trial counsel knew of Officer Bruce's "untruthfulness," he "should have challenged her untruthfulness in the search warrants that [led] to the collection of evidence in this case." A post-conviction petitioner asserting he or she received ineffective assistance of counsel based upon counsel's failure to file a motion to suppress must prove, by clear and convincing evidence, that "(1) a suppression motion would have been meritorious; (2) counsel's failure to file such motion was objectively unreasonable; and (3) but for counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Phillips*, 647 S.W.3d at 404. To meet this burden, the petitioner must, "[i]n essence . . . incorporate a motion to suppress within the proof presented at the post-conviction hearing." *Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011), *no perm. app. filed*. Axiomatically, the Petitioner must also identify what evidence should have been challenged in such a motion and the legal basis for the challenge.

At the evidentiary hearing, the Petitioner argued that trial counsel should have sought the suppression of "certain evidence" and alluded to an issue with the chain of custody of a t-shirt collected into evidence. On appeal, he reiterates that Officer Bruce "collected the t-shirt [the Petitioner] was wearing at the time of the offense" and that trial counsel failed to file any motion to suppress "pertaining to former [Officer] Bruce's handling of that evidence." However, no proof was adduced at the evidentiary hearing to establish, by clear and convincing evidence, that a motion to suppress the t-shirt would have been meritorious, that trial counsel's failure to file such a motion was unreasonable, or that the failure to file a motion was prejudicial. Likewise, the Petitioner presented no proof regarding any issues with the search warrants, beyond a general unsupported allegation that they may have been based upon untrue information from Officer Bruce; he did not identify what evidence was attained pursuant to the search warrant which should have been challenged; and the Petitioner did not allege any untruthfulness on Officer Bruce's behalf specific to his case. The Petitioner's failure to incorporate a motion to suppress within the proof presented at the evidentiary hearing renders his claims unavailing. *See id.*; *see also Ward v. State*, No. W2021-01421-CCA-R3-PC, 2022 WL 6957222, at *6 (Tenn. Crim. App. Oct. 12, 2022) (affirming denial of post-conviction relief where "the petitioner fail[ed] to explain what items should have been suppressed or explain the grounds upon which trial counsel should have argued these unnamed items should have been suppressed."), *perm. app. denied* (Tenn. Feb. 9, 2023).

Moreover, the Petitioner's only allegation of prejudice is a statement that "there[ is] a substantial likelihood that the verdict at trial would have been different." This conclusory

argument falls far short of meeting his burden of proving prejudice by clear and convincing evidence. *Taylor v. State*, No. W1999-00977-CCA-R3-PC, 2000 WL 714387 at *3 (Tenn. Crim. App. May 26, 2000) ("Unsupported allegations by a [post-conviction] petitioner will not suffice to establish prejudice."), *perm. app. denied* (Tenn. Dec. 4, 2000). The record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish his claim of ineffective assistance of counsel. The post-conviction court did not err by denying relief on this basis.

The Petitioner next claims that trial counsel rendered ineffective assistance by failing to properly communicate with the Petitioner prior to trial or to ensure the Petitioner was adequately prepared for trial. In support of this argument, the Petitioner notes there were contradictions in his and trial counsel's testimonies at the evidentiary hearing regarding the number of times trial counsel met with the Petitioner prior to trial and whether trial counsel explained the "pros and cons" of proceeding to trial. In consideration of this claim, the post-conviction court found that regardless of the disagreements between trial counsel and the Petitioner regarding the number of times trial counsel met with the Petitioner, it was "apparent" from their testimonies they met at least three times. The post-conviction court accredited trial counsel's testimony that he discussed the relevant evidence, trial strategy, and the witnesses to be called at trial and reviewed discovery with the Petitioner during their meetings.

The record does not preponderate against the post-conviction court's findings. The Petitioner's arguments regarding this claim rely heavily on the contradictions between his and trial counsel's testimony; however, assessments of witness credibility are entrusted to the post-conviction court, the trier of fact, during a post-conviction evidentiary hearing. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *see also Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) ("As a general matter, appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence."). Apparently agreeing with trial counsel's estimation that he met with the Petitioner at least five times, the Petitioner nevertheless asserts, without citation to authority, that "only meeting with a client facing a first[]degree murder charge five times is de facto ineffective [assistance]." However, claims of ineffective assistance of counsel based upon trial counsel's performance in meeting and consulting with a client are principally concerned with "how trial counsel was able to impart and receive important information . . . so that counsel and the petitioner could make informed decisions about the case," not the sheer number of meetings between client and counsel. *Hall v. State*, No. M2021-01555-CCA-R3-PC, 2023 WL 2726780, at *7 (Tenn. Crim. App. Mar. 31, 2023), *no perm. app. filed*. Trial counsel's accredited testimony established that during their meetings, he reviewed discovery with the Petitioner and discussed the relevant evidence, trial strategy, and the

witnesses to be called at the Petitioner's trial. The post-conviction court did not err by denying relief on this basis.

Finally, the Petitioner argues that trial counsel rendered ineffective assistance by failing to adequately communicate the status of plea negotiations. He maintains that trial counsel did not explain the "pros and cons" of proceeding to trial and that he "would have made a different decision" about not pleading guilty had trial counsel done so. In consideration of this claim, the post-conviction court found that the only plea offer discussed in the Petitioner's case was extended while the Petitioner was represented by prior counsel. The post-conviction court also found that the Petitioner did not testify regarding the nature of that plea, whether he wanted to accept it, or whether he instructed trial counsel to renew plea discussions. The post-conviction court thus concluded that the Petitioner had failed to establish either deficiency or prejudice.

The record does not preponderate against the post-conviction court's determinations. As a preliminary consideration, we note that the State is under no obligation to enter into plea negotiations with any criminal defendant. *State v. Head*, 971 S.W.2d 49, 50 (Tenn. Crim. App. 1997). When the State elects to negotiate with a criminal defendant, the defendant is entitled to the effective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 140 (2012); *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014). A post-conviction petitioner asserting he or she received ineffective assistance of counsel based upon counsel's performance during plea negotiations must prove that had counsel not performed deficiently, "(1) [the petitioner] would have accepted the plea, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the terms of the offer, such that the penalty under its terms would have been less severe than the penalty actually imposed." *Nesbit*, 452 S.W.3d at 800-01.

Trial counsel's accredited testimony indicated that plea negotiations began and ended entirely while the Petitioner was represented by prior counsel. When the Petitioner rejected the State's plea offer, the State concluded plea negotiations. When trial counsel was appointed, the State informed him it was "ready to go to trial," as was its prerogative. Trial counsel thus had no role in the Petitioner's plea negotiations. Further, as the post-conviction court noted in its order denying relief, the Petitioner did not testify that he instructed trial counsel to attempt to revive plea negotiations with the State. The record does not preponderate against the post-conviction court's determination that the Petitioner has failed to establish deficient performance. *See Thomas v. State*, No. W2018-02171-CCA-R3-PC, 2019 WL 3822528, at *4 (Tenn. Crim. App. Aug. 15, 2019) ("The State is under no obligation to enter into plea negotiations, and counsel cannot be faulted for the State's unwillingness to engage in such negotiations.") (internal citations omitted), *no perm. app. filed*. The post-conviction court did not err in denying relief on this basis.

- 11 -

### III.    CONCLUSION

Following our review of the record and based upon the foregoing analysis, we affirm the judgment of the post-conviction court.

s/ *Steven W. Sword*
STEVEN W. SWORD, JUDGE